IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANNE THEUNE *

Plaintiff *

vs. * CIVIL ACTION NO. MJG-13-1015

U.S. BANK, N.A. AS TRUSTEE *
FOR J.P. MORGAN ALTERNATIVE
LOAN TRUST 2007-S1, et al. *

Defendants *

* * * * * * * * *

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant U.S. Bank National Association, as Trustee for J.P. Morgan Alternative Loan Trust 2007-S1's Motion for Summary Judgment [Document 33] and the materials submitted relating thereto. The Court finds a hearing unnecessary.

## I. BACKGROUND OF UNDISPUTED FACTS[1]

Plaintiff Anne Theune ("Plaintiff") brings this lawsuit seeking to quiet title in the real property located at 302 Goldenrod Drive, Pasadena, MD 21122 ("the Property") and a declaratory judgment that her signature was forged on the documents used to take out two loans on the Property in 2006. The 2006 loans went into default, and Defendant U.S. Bank, N.A.

[1] The following are taken from the parties' briefings and the state court dockets in the relevant underlying cases.

a/k/a U.S. Bank National Association, as Trustee for J.P. Morgan Alternative Loan Trust 2007-S1 ("USB") purchased the Property at a foreclosure sale on October 7, 2010.

A. Deeds of Trust Secured by the Property

In September 2004, Plaintiff, her late husband Peter Theune,[2] and Paul Sweatman granted a deed of trust on the Property to secure a loan from Washington Mutual Bank ("WMB") in the amount of $526,000.00 ("WMB DOT"). In June 2005, Plaintiff, Peter Theune, and Paul Sweatman granted a second deed of trust on the Property to secure a loan from APL Federal Credit Union ("APL") in the amount of $150,000.00 ("APL DOT").

On April 17, 2006, a third deed of trust was granted[3] on the Property to secure a loan from Crescent Mortgage Company in the amount of $647,500.00 ("Crescent DOT").[4] The Crescent DOT contains a Refinance Affidavit that states the $647,500.00 was

---

[2] Peter Theune passed away on June 1, 2010. Compl. ¶ 16.

[3] Plaintiff maintains that her signature and her late husband's signature were forged on the 2006 loan documents and that she "was not aware [of the forgery] until the trustees on the forged deeds of trust instituted foreclosure proceedings on the Property." [Document 36-1] at 1-2.

[4] Also on April 17, 2006, a fourth deed of trust was granted on the Property to secure a second loan from Crescent in the amount of $185,000.00 ("Crescent DOT2"). Plaintiff contends that her and her husband's signatures were forged on the Crescent DOT2 documents. However, Plaintiff concedes that the foreclosure on the Crescent DOT renders moot her claims of forgery as to Crescent DOT2 because "the foreclosure of DOT 1 extinguished DOT 2." See [Document 26-1] at 10; see also [Document 36-1] at 17.

"borrowed for the purpose of refinancing" the WMB DOT – principal balance due of $519,830.58 – and the APL DOT – principal balance due of $148,359.50. See [Document 2-2] at 17.

In May 2006, Certificates of Satisfaction were issued for the WMB DOT and the APL DOT releasing the liens on the Property secured by those loans.

B. Foreclosure Action

The following took place in the Foreclosure Action:

Oct. 25, 2007 Defendant appointed Substitute Trustees to foreclose on the Property.

Nov. 5, 2007 Substitute Trustees began foreclosure proceedings in the Circuit Court for Anne Arundel County, Maryland (Case No. 02C07126889).

Feb. 13, 2008 "**First Allegation of Forgery"** – Plaintiff filed a Complaint for Temporary Restraining Order and Preliminary and Permanent Injunctive Relief seeking to enjoin the foreclosure, claiming, inter alia, that her signature had been forged on the Crescent DOT.[5]

Mar. 6, 2008 Circuit court granted the preliminary injunction, but did not make any specific findings as to the forgery allegation.

Aug. 27, 2008 Substitute Trustees moved to dissolve the injunction, arguing that the injunction was procedurally improper and that foreclosure was permissible based upon equitable subrogation.

Nov. 12, 2008 Circuit court held a hearing on the motion to dissolve. Plaintiff's former attorney was not present, but had reviewed a Consent Order

---

[5] Plaintiff's late husband did not join in the first, or any of the subsequent, allegations of forgery, which were filed by Plaintiff's former attorney(s) on behalf of Plaintiff only.

dissolving the injunction drafted by the attorney for the Substitute Trustees and given his "express authority [to counsel] to endorse my signature thereon."[6] [Document 33-7] at 8. The circuit court entered the Consent Order Granting Motion to Dissolve Preliminary Injunction.

Jan. 26, 2009 "**Second Allegation of Forgery"** – Plaintiff, with a new attorney who was representing her in proceedings for a limited divorce from Peter Theune, filed a Renewed and Modified Complaint for Temporary Restraining Order and Preliminary Injunction or Alternatively, Motion to Reconsider Rescission. The Second Allegation of Forgery does not state that the Consent Order was entered without Plaintiff's permission.

Feb. 3, 2009 Circuit court issued Temporary Restraining Order and Preliminary Injunction.

Sept. 21, 2009 Substitute Trustees filed a Motion to Set Aside Temporary Restraining Order and Preliminary Injunction, making three arguments related to the Maryland rules for challenging a foreclosure and one argument related to the Consent Order.

Oct. 22, 2009 Circuit court entered Order to Set Aside Temporary Restraining Order and Preliminary Injunction, allowing the foreclosure to proceed.

Nov. 4, 2009 – "**Third Allegation of Forgery"** – Plaintiff filed a Motion for Reconsideration on the grounds that the circuit court had not considered her Response to the Substitute Trustees' September 21 motion. Plaintiff contended that her Response was filed timely but returned because of a failure to include the attorney appearance fee and that by the time her attorney received the returned response, the circuit court had already set aside the injunction. Plaintiff's Response was attached to the motion to reconsider and reasserted the forgery allegations.

---

6 Plaintiff contends that her former attorney entered into the Consent Order without her permission and that she "never consented to have the injunction lifted." See, e.g., [Document 36-1] at 11.

Jan. 12, 2010 Circuit court denied Plaintiff's Motion.

Mar. 23, 2010 "**Fourth Allegation of Forgery"** – Plaintiff, again with a new attorney, filed a Complaint for Temporary Restraining Order and Preliminary and Permanent Injunctive Relief repeating the forgery allegation. The Fourth Allegation of Forgery noted that a Consent Order dissolved the first preliminary injunction, but did not state that it was entered without Plaintiff's permission.

Mar. 23, 2010 Substitute Trustees filed an Opposition to Plaintiff's Complaint, arguing that the request for a preliminary injunction did not comply with the Maryland rules. The Opposition does not address the Consent Order.

Mar. 26, 2010 Circuit court entered a one-sentence Order denying Plaintiff's Complaint.

Oct. 7, 2010 Property sold to USB at foreclosure sale for $544,748.00.

Jan. 19, 2011 Circuit court issued the Final Order ratifying and confirming the foreclosure sale, which was docketed on February 1, 2011.

Plaintiff and USB agree that "no appeal of any order in the Foreclosure Action was docketed by the Plaintiff." [Document 33-1] ¶ 18.

C. 2010 Clear Title Action

Oct. 28, 2010 Plaintiff, with an attorney different from any of those used in the Foreclosure Action, filed a Complaint and Request to Clear Title against one of the Substitute Trustees in the Circuit Court for Anne Arundel County (Case No. 02C10156629).

| | |
|---|---|
| May 10, 2011 | Plaintiff filed a Motion to Dismiss Complaint and Request to Clear Title.[7] |
| June 20, 2011 | Circuit court granted Plaintiff's Complaint and dismissed the case with prejudice. |
| Sept. 9, 2012 | Plaintiff filed a Motion to Vacate Order Dismissing Case with Prejudice. |
| Oct. 19, 2012 | Circuit court exercised its revisory power under Maryland Rule 2-535(b) and revised the Order June 20, 2011 to be dismissed without prejudice. |

## II. PROCEDURAL HISTORY

On November 15, 2012, Plaintiff filed the instant lawsuit in the Circuit Court for Anne Arundel County, Maryland against USB for Quiet Title and Declaratory Judgment.[8] On April 5, 2013, USB filed a Notice of Removal in this Court.

On April 13, 2012, USB filed a Motion to Dismiss, or in the Alternative, for Declaration that Title to the Property is Vested in the Foreclosure Purchaser, relying upon the affirmative defense of res judicata. [Document 22-1]. In Response, Plaintiff argued that dismissal was improper because

[7] Plaintiff contends that her former attorney filed the Motion to Dismiss without her consent. See Theune Aff. [Document 36-3] ¶¶ 35-39.
entered into the Consent Order without her permission and that she "never consented to have the injunction lifted." See, e.g., [Document 36-1] at 11.

[8] The Complaint also names MD TL, LLC ("MDTL") as a Defendant. "MDTL purchased a tax certificate at a tax sale based on delinquent taxes due on the Property. Prior to removal to federal court, the state court dismissed all claims against MDTL." Theune v. U.S. Bank, N.A., No. MJG-13-1015, 2013 WL 5934114, at *1 n.4 (D. Md. Nov. 1, 2013).

the Foreclosure Action was tainted by extrinsic fraud from the Consent Order. [Document 26-1].

In the Memorandum and Order Re: Motion to Dismiss, issued November 1, 2013 [Document 30], the Court denied USB's Motion, ruling that on procedural grounds, USB was not entitled to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[9] [Document 30]. The court stated, however, that "USB may well be entitled to summary judgment on its affirmative defenses" and denied the Motion without prejudice to USB "to file a Motion for Summary Judgment on any affirmative defense presented in its Answer." Id. at 13-14.

USB filed an Amended Answer on November 27, 2013, asserting the affirmative defenses of res judicata, equitable subrogation, and statute of limitations. [Document 32]. By the instant Motion, USB seeks summary judgment pursuant to Rule 56.

## III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[9] All "Rule" references herein are to the Federal Rules of Civil Procedure.

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). Thus, in order "[t]o defeat a motion for summary judgment, the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## IV. DISCUSSION

### A. Statute of Limitations

#### 1. Accrual of the Cause of Action

The Court's jurisdiction over the instant matter is based upon diversity of citizenship, so Maryland state law governs the applicability of the statute of limitations. See Rockstroh v. A.H. Robins Co., Inc., 602 F. Supp. 1259, 1262 (D. Md. 1985). In Maryland, absent statutory exceptions, "[a] civil action at law shall be filed within three years from the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5-101. "'[W]hen an action accrues is left to judicial determination.'" Chesapeake Bay Found., Inc. v. Weyerhaeuser Co., 848 F. Supp. 2d 570, 579 (D. Md. 2012) (citation omitted). "Under Maryland's discovery rule, 'the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.'" Id. (citation omitted).

Plaintiff seeks a declaratory judgment that her signature was forged on the Crescent DOT and a judicial determination that she and USB are joint owners of the property. Thus, the cause of action accrued when Plaintiff became aware of the alleged forgery. The Crescent DOT documents were signed on April 17, 2006. See [Document 2-2]. In the Fourth Allegation of Forgery, filed March 23, 2010, Plaintiff "solemnly affirm[ed]" that "[she] had no knowledge of the refinance that led to the

[Crescent DOT] until one (1) year after documents were signed." [Document 22-14] ¶ 14. USB contends that this statement is "Plaintiff's own admission that she became aware of the existence of the Crescent First DOT as early as April 2007." [Document 33-1] at 19. Plaintiff argues that she cannot "verify" that she became aware of the alleged forgery in April 2007 because the Fourth Allegation of Forgery "was prepared by her former attorney who was later disbarred, [so] the statements in the document are potentially at issue." [Document 36-1] ¶ 6.

The Court will assume that Plaintiff did not become aware of the Crescent DOT until after April 2007. Nevertheless, the date for accrual of the cause of action is no later than February 13, 2008 when Plaintiff filed the First Allegation of Forgery in the Foreclosure Action.[10] See [Document 22-4]. Thus, by virtue of the statute of limitations, Plaintiff was required to file any lawsuit against USB relating to the Crescent DOT and the corresponding effects on ownership of the Property by February 13, 2011.

---

[10] The date might be even earlier, November 5, 2007, the date of initiation of the Foreclosure Action, because by then Plaintiff presumably was aware of the alleged forgery on the Crescent DOT.

2. Tolling of the Statute of Limitations

Plaintiff appears to concede that she was required to file the Complaint against USB by February 13, 2011, but argues that the 2010 Clear Title Action was filed timely and the statute of limitations should be tolled. See [Document 36-1] at 16.

In Maryland, the limitations period can be tolled "by either a legislative or judicial exception." Shailendra Kumar, P.A. v. Dhanda, 43 A.3d 1029, 1039 (Md. 2012). Plaintiff does not suggest that there is a legislative exception to the three-year limitations period for the instant lawsuit.[11] Instead, she argues that judicial tolling is appropriate because of allegedly defective legal representation she received in connection with the 2010 Clear Title Action. See [Document 36-1] at 16-17.

Judicial tolling is appropriate when "'(1) there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and, (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of

[11] In Maryland, when a civil action is filed within the limitations period and later dismissed without prejudice, a plaintiff has 60 days from the date of dismissal – or expiration of the limitations period, whichever is longer – to file a new action "for the same cause against the same party or parties." Md. Code Ann., Cts. & Jud. Proc. § 5-119(b). However, § 5-119 "applies only to a civil action or claim that is dismissed once for failure to file a report in accordance with [medical malpractice claim procedures]" and "does not apply to a voluntary dismissal of a civil action or claim by the party who commenced the action." § 5-119(a).

limitations.'" Shailendra Kumar, 43 A.3d at 1041 (citation omitted). "The statute of limitations reflects a legislative judgment of what is deemed an adequate period of time in which 'a person of ordinary diligence' should bring his action." Grand-Pierre v. Montgomery Cnty., 627 A.2d 550, 552-53 (Md. Ct. Spec. App. 1993) (citation omitted).

> Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them." . . . Moreover, the courts ought [to] be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.
>
> This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights.

Furst v. Isom, 584 A.2d 108, 112 (Md. Ct. Spec. App. 1991) (alteration in original).

On October 28, 2010, Plaintiff filed the 2010 Clear Title Action in the Circuit Court for Anne Arundel County against one of the four Substitute Trustees. USB was not named as a defendant. See [Document 2-5]. The period of limitations for

filing a separate lawsuit against USB – or for seeking to add USB as a defendant in the 2010 Clear Title Action – expired on February 13, 2011. In May 2011, Plaintiff's former attorney filed a motion to dismiss the complaint, which the circuit court granted with prejudice on June 20. Fifteen months later in September 2012, Plaintiff, with yet another new attorney – her attorney in the instant lawsuit - filed a motion to vacate the circuit court's order, which the circuit court granted on October 9, 2012, changing the dismissal of the case from with prejudice to without prejudice. Plaintiff filed the instant lawsuit on November 15, 2012 - twenty-one months after limitations had run - naming USB as a Defendant for the first time and seeking quiet title and declaratory judgment.

In the instant case, Plaintiff filed a new lawsuit against a defendant not named in a previous lawsuit after the statute of limitations had run and the previous lawsuit had been dismissed. The most analogous situation the Court can find refers to the situation presented "[w]hen amendment is sought to add a new party to the proceedings." Grand-Pierre, 627 A.2d at 553; see also Crowe v. Houseworth, 325 A.2d 592, 595 (Md. 1974). In Maryland, when a new party is added to proceedings, "any cause of action as to that party is, of course, a new cause of action. Thus, under Maryland law, [except in a] misnomer [situation], relation back is not permitted when an amendment is sought to

add a new defendant." Grand-Pierre, 627 A.2d at 553 (internal citation omitted). The Court of Special Appeals of Maryland has held that Maryland law does not provide a plaintiff "with the ability to avoid the bar of limitations where he voluntarily dismissed his complaint and filed an identical claim, based on the same facts, more than three years after the accrual of the action." Sheng Bi v. Gibson, 45 A.3d 305, 309 (Md. Ct. Spec. App. 2012).

Plaintiff argues that she "was unable to proceed with the [2010 Clear Title Action] because such complaint was dismissed with prejudice based on a motion to dismiss to which [she] did not consent." [Document 36-1] at 16. However, Plaintiff was on notice that USB had purchased the Property at the foreclosure sale as early as November 3, 2010 when the Report of Sale was docketed in the Foreclosure Action. See [Document 2-4]. Plaintiff had ample time before February 13, 2011 to seek to include USB in the 2010 Clear Title Action. Further, at the time Plaintiff's former attorney filed the motion to dismiss the 2010 Clear Title Action in May 2011, limitations for adding USB as a defendant in that case or for filing a separate lawsuit against USB had expired three months earlier.[12]

[12] Presumably, this explains why the circuit court order granting Plaintiff's motion dismissed the case with prejudice – since the statute of limitations had already run.

The Court finds that the Complaint against USB was filed outside of the applicable statute of limitations. Plaintiff's argument in favor of tolling the statute of limitations boils down to an allegation that she received defective legal representation in connection with the 2010 Clear Title Action. However, Maryland law does not permit Plaintiff to resurrect the 2010 Clear Title Action against a Defendant not named in the original lawsuit based on mere allegations of legal malpractice when the instant lawsuit was filed twenty-one months after the expiration of the statute of limitations.[13] Such a "proposed tolling rule would permit a plaintiff to 'effectively postpone the running of the statute [of limitations] for an indefinite period of time.'" Cf. Philip Morris USA, Inc. v. Christensen, 905 A.2d 340, 348 (Md. 2006) (alteration in original) (citation omitted), abrogated on other grounds by Mummert v. Alizadeh, 77 A.3d 1049 (Md. 2013).

Accordingly, the Court shall grant USB's Motion for Summary Judgment.

[13] Plaintiff contends that "[o]n August 23, 2012, [she] filed a complaint with the Attorney Grievance Commission in Maryland regarding [her former attorney]'s wrongful dismissal of [the 2010 Clear Title Action]." Theune Aff. [Document 36-3] ¶ 46. However, there has been no evidence presented regarding any disciplinary action against the attorney.

B. Res Judicata

The Court finds an alternative ground for granting the instant Motion. Even if the suit were filed timely, Plaintiff's claims would be barred by the doctrine of res judicata.

"[T]he law is firmly established in Maryland that the final ratification of the sale of property in foreclosure proceedings is res judicata as to the validity of such sale, except in case of [extrinsic] fraud[[14]] or illegality . . . ." Ed Jacobsen, Jr., Inc. v. Barrick, 250 A.2d 646, 648 (Md. 1969) (internal quotation marks omitted). "Fraud is extrinsic when it actually prevents an adversarial trial . . . ." Billingsley v. Lawson, 406 A.2d 946, 951 (Md. Ct. Spec. App. 1979). Examples include:

> "[w]here the unsuccessful party has been prevented from exhibiting fully his case, by

[14] Maryland cases generally address the presence of extrinsic fraud in a final order ratifying a foreclosure sale by reference to Maryland Rule 2-535(b), which provides that "the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity." See, e.g., Green v. Ford Motor Credit Co., 828 A.2d 821, 830-31 (Md. Ct. Spec. App. 2003). It is unclear whether the general principle under Maryland law relating to extrinsic fraud and ratification orders, see Ed Jacobsen, Jr., Inc. v. Barrick, 250 A.2d 646, 648 (Md. 1969), exists independently of Maryland Rule 2-535(b). If that is not the case, then it is unclear whether this Court sitting in diversity may employ Maryland Rule 2-535(b) to invalidate a Maryland state court judgment and/or whether the Plaintiff was required to affirmatively request such relief in her Complaint. Cf. Maicobo Inv. Corp. v. Von Der Heide, 243 F. Supp. 885, 893 (D. Md. 1965). Plaintiff's briefing of the extrinsic fraud exception leaves much to be desired. However, the Court will assume that Plaintiff could be entitled to the relief she requests as presented in her extrinsic fraud theory if she prevailed on showing that there was extrinsic fraud.

> fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side . . . ."

Schwartz v. Merchants Mortgage Co., 322 A.2d 544, 547 (Md. 1974).

Plaintiff argues that the Foreclosure Action was tainted by extrinsic fraud because her former attorney did not have her permission to enter into the Consent Order dissolving the preliminary injunction on November 12, 2008. However, the entry of the Consent Order does not appear to have prevented an adversarial process in the Foreclosure Action. Nor does the Consent Order – assuming Plaintiff's former attorney acted improperly in not consulting Plaintiff - rise to the level of actions that have been found to constitute extrinsic fraud.

The Foreclosure Action docket reflects that Plaintiff actively participated in the Foreclosure Action against the Property both before and after entry of the Consent Order. For example, on three occasions after entry of the Consent Order – January 26, 2009, November 4, 2009, and March 23, 2010 – Plaintiff sought to preliminarily and/or permanently enjoin the foreclosure sale based upon, inter alia, the alleged forgery of

her signature on the Crescent DOT. The circuit court issued its Final Order in the Foreclosure Action on January 19, 2011, yet Plaintiff concedes that she never filed an appeal of any order in the Foreclosure Action docket. See [Document 36-1] at 7. The docket also indicates that on May 8, 2014 the circuit court granted USB's Motion for Judgment of Possession of the Property and that Plaintiff was served with a Writ of Possession on July 11. However, the docket does not indicate that Plaintiff has responded to or challenged USB's Motion for Judgment of Possession. Cf. Jones v. HSBC Bank USA, N.A., No. 09CV2904, 2011 WL 382371, at *4 (D. Md. Feb. 3, 2011). Thus, there was a final judgment on the merits[15] in the Foreclosure Action, and res judicata provides an alternative round to grant USB summary judgment.[16]

---

[15] Plaintiff contends that she was denied a fair opportunity to be heard after entry of the Consent Order "because the urgency of the situation did not afford Plaintiff ample time to retain competent counsel." [Document 36-1]. While Plaintiff may have experienced an unfortunate series of events with her former attorneys, the alleged ineffectiveness and/or misconduct of one, or more, of those attorneys does not affect whether entry of the Consent Order – the act alleged to be the extrinsic fraud – prevented Plaintiff from moving forward with her case.

[16] Because the Court has determined that USB is entitled to summary judgment on the affirmative defense of the statute of limitations, and also very likely on res judicata, it need not reach USB's third affirmative defense of equitable subrogation.

## V. CONCLUSION

For the foregoing reasons:

1. Defendant U.S. Bank National Association, as Trustee for J.P. Morgan Alternative Loan Trust 2007-S1's Motion for Summary Judgment [Document 33] is GRANTED.

2. Judgment shall be issued by separate Order.

SO ORDERED, on Friday, August 01, 2014.

/s/
Marvin J. Garbis
United States District Judge